IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES PARKS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-1299 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                              **October 18, 2024**

Plaintiff Charles Parks brings this Section 1983 action against prison officials and the City of Philadelphia in response to an alleged attack against him while he was incarcerated at Curran-Fromhold Correctional Facility. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Commissioner Blanche Carney, Deputy Warden Karen Butler, Deputy Warden Robert Rose, and City of Philadelphia have moved to dismiss Counts I, II, and IV of the complaint, which allege Eighth Amendment failure-to-protect claims against the supervisory defendants and municipal liability claims against the City for understaffing, failure to properly segregate inmates, and failure to train and supervise correctional staff. Because Mr. Parks has not alleged sufficient facts to plead his claims, the Court grants the motion to dismiss in full, albeit without prejudice.

**BACKGROUND**

In April 2023, Plaintiff Charles Parks was incarcerated at Curran-Fromhold Correctional Facility (CFCF) in Philadelphia, Pennsylvania. Compl. ¶¶ 3, 11. Parks claims that on approximately April 12, 2023, he was attacked by a fellow inmate resulting in a corneal abrasion and a fractured orbital socket. *Id.* ¶¶ 12-13. According to his complaint, two correctional officers—Defendants Carriker and John Doe—were present at the time and "stood by, watched, and did not intervene to stop the attack." *Id.* ¶ 14. Following the attack, Parks was transported to Jefferson-

Torresdale hospital for care because the CFCF medical department was unable to attend to his injuries. *Id.* ¶¶ 17-18. Parks asserts he has suffered multiple psychological injuries, including anxiety and depression, as a result of the incident. *Id.* ¶¶ 48, 64, 75. He now brings this suit under 42 U.S.C. § 1983, asserting Eighth Amendment claims against the supervisory defendants for failure to protect and municipal liability claims against the City of Philadelphia for understaffing, failure to properly segregate inmates, and failure to train and supervise.[1]

Parks describes the three supervisory defendants—Commissioner Carney, Deputy Warden Butler, and Deputy Warden Rose—as being responsible for CFCF operations, including admissions, diagnostics, inmate placement, classification, security polices, safety, hiring, and staffing. *Id.* ¶¶ 5, 26, 51. He claims their unconstitutional actions resulted in his injury and that specifically, they failed to protect him by: placing him on a block with inmates they knew had attacked other inmates, failing to maintain appropriate staffing in housing units, failing to ensure inmate compliance, and failing to conduct regular checks of inmate cells. *Id.* ¶ 46. Parks states Defendants knew he was at risk because they "knew CFCF was grossly understaffed at the time of the assault" and "had personal knowledge of the prior assaults by inmates at the CFCF due to inadequate staffing." *Id.* ¶¶ 26, 52. He further alleges Defendants "knew or had reason to know other inmates on [his] block at the CFCF posed a danger to [his] safety." *Id.* ¶ 53. Specifically, he alleges they were aware of the risk because "[a]s a result of the prior assault on Mr. Parks, Defendants knew the inmates housed with [Parks] had a propensity to attack other inmates like [him] because they were aware of the circumstances of the prior assault or physically present at

---

[1] Parks also brings Eighth Amendment claims for failure to protect and failure to intervene against Correctional Officers Carriker and John Doe. *Id.* at 9-14. Because the City did not accept service on behalf of those defendants and does not represent them, this motion to dismiss does not apply to them. *See* ECF No. 3 at 2.

the time of the assault." *Id.* ¶ 33. Parks provides no further information about the prior assault. *See Compl.* In his complaint, Parks ties the alleged April 2023 attack against him to a wider context within the Philadelphia Prison System, listing seven incidents in which one inmate attacked another within the last four years, sometimes to the point of death. *Id.* ¶ 29.

In addition to his Eighth Amendment claims, Parks brings municipal liability claims against the City of Philadelphia, arguing the City's "customs, practices, and policies . . . were a moving force behind the violations of Plaintiff's constitutional rights." *Id.* ¶ 78. Parks' allegations against the City focus on three primary issues: understaffing, failure to ensure inmates are properly classified and segregated from inmates in general population, and failure to properly train and supervise correctional officers regarding inmate safety. *Id.* ¶¶ 30-31, 34. Parks alleges the City knew CFCF was "grossly understaffed" and that the understaffing would create a risk for him. *Id.* ¶¶ 85-86. He cites to a 2022 article in *Prison Legal News*, which discusses various prison staffing issues, including mass quitting, absenteeism, and the falsification of staffing records to hide understaffing. *Id.* ¶ 32. Additionally, he claims the City knew of "prior incidents where inmates were improperly classified and resulting harm occurred," and that the failure to address those harms resulted in Parks' injuries. *Id.* ¶ 36. He roots these challenges in the City's failure to train, supervise, and discipline employees in the Philadelphia Prison System—including Correctional Officers Carriker and John Doe—effectively condoning constitutional violations carried out by prison staff. *Id.* ¶¶ 87-88, 94-100.

**STANDARD OF REVIEW**

To survive a motion to dismiss, a plaintiff must plead sufficient facts to state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Pleadings need not contain "detailed factual allegations" to meet this

standard, but they must offer more than conclusory statements or formulaic recitations of the elements of a cause of action. *Id.* Pleadings must provide "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In its review, a court must accept all well-pleaded facts as true and review them in the light most favorable to the plaintiff. *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018). A court must then assess whether those well-pleaded facts plausibly entitle the plaintiff to relief. *Iqbal*, 556 U.S. at 679.

**DISCUSSION**

Defendants move to dismiss Count I (a general Eighth Amendment claim), Count II (Eighth Amendment claim for failure to protect), and Count IV (municipal liability claims).[2] Because Parks failed to plausibly plead both his Eighth Amendment claims against the supervisory defendants and his municipal liability claims against the City of Philadelphia, the Court dismisses Count I, Count II, and Count IV as to the moving defendants.

**I.      Count II: Eighth Amendment Claim for Failure to Protect**

In Count II, Parks alleges Commissioner Carney, Deputy Warden Butler, and Deputy Warden Rose violated his Eighth Amendment rights by failing to protect him at CFCF. He brings these claims via 42 U.S.C. § 1983, a mechanism through which plaintiffs may enforce their constitutional rights. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). "To state a claim under § 1983, a plaintiff (1) must allege the violation of a right secured by the Constitution and laws of the United States, and (2) must show that the alleged deprivation was committed by a person acting under color of state law." *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 437 (3d Cir. 2020) (quoting

---

[2] The Count I claims duplicate those made in Counts II and IV. Accordingly, the Court addresses Count I alongside its analysis of Counts II and IV.

*West v. Atkins*, *4*87 U.S. 42, 48 (1988)). Section 1983 liability only applies to those who had a "personal involvement in the alleged wrongs," meaning there is no *respondeat superior* theory of liability under the statute. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiffs must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Pleadings that show a defendant participated in the conduct or knew of the conduct and acquiesced to it are sufficient, although knowledge must be actual, not constructive. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). In the Eighth Amendment context, inmates seeking to hold prison supervisors liable must "establish a link between the supervisor, the act, and the injury." *Id.* at 227.

The Eighth Amendment's prohibition on "cruel and unusual punishments" has been interpreted to impose specific duties upon prison officials, including the duty to "protect inmates from violence at the hands of other inmates." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). This obligation stems from the often violent and inherently vulnerable conditions of incarceration, which leave incarcerated individuals without the ability to protect themselves and without external sources of support. *Id.* In this context, prison officials may not "let the state of nature take its course." *Id.* "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* (quotation marks and internal citations omitted).

However, not all prison assaults are actionable under the Eighth Amendment. Relief is available only where a plaintiff has shown (1) a sufficiently serious deprivation, based on an objective standard, and (2) that the prison official carried out that deprivation with a "sufficiently culpable state of mind," based on a subjective standard. *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). A deprivation is sufficiently serious—thus meeting

the first prong—when it results in the "denial of the minimal civilized measure of life's necessities" and where the prisoner is "incarcerated under conditions posing substantial risk of serious harm." *Porter*, 974 F.3d at 441 (quoting *Farmer*, 511 U.S. at 834).

To establish the second prong, a plaintiff must show that the prison official acted with "deliberate indifference" to prisoner health and safety, meaning the official actually knew of the risk of harm and did not act to abate it. *Farmer*, 511 U.S. at 847; *see also Thomas*, 948 F.3d at 138. Demonstrating knowledge requires a showing that the official was "actually . . . aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). However, knowledge can be inferred from circumstantial evidence showing the risk was obvious. *Id.* "Evidence, for example, showing that a substantial risk of inmate attacks was pervasive or well-documented and that officials had been exposed to information about the risk may be sufficient." *Robinson v. Johnson*, 449 F. App'x 205, 208 (3d Cir. 2011).  Even where knowledge is established, liability will not be imposed if the official acted reasonably—regardless of whether harm occurred—as the Eighth Amendment only imposes the obligation to establish "reasonable safety." *Id.*

Here, Parks has failed to plead sufficient facts to establish a plausible Eighth Amendment claim against the supervisory defendants. Based on his sparse complaint, it is unclear to the Court whether Parks was exposed to a substantial risk of serious harm while incarcerated at CFCF. Parks states he was placed on a block with other inmates who had a "propensity to attack individuals like Mr. Parks," thus posing a danger to his safety. Compl. ¶ 33. However, he fails to explain what that "propensity" entails and what it means to be an individual "like" him. In the same paragraph of the complaint, he refers to a prior incident in which he was assaulted and alludes vaguely to the "circumstances" of that assault, but again, fails to describe those circumstances and how they relate

6

at all to the risk—and the resulting assault—he describes in this lawsuit. And, the description of the assault giving rise to this action is vague, too. Parks provides no information about what led to the assault nor about his relationship to the assailant. Indeed, he provides an ambiguous description of his assailant, stating first that it was one inmate and later on, that it was "Wingfield and Watson," two individuals mentioned in passing halfway through the complaint.[3] Compl. ¶ 68. Without more, the Court is unable to determine whether Parks was subject to a substantial risk of serious harm.

Even assuming a substantial risk exists, Parks fails to plead sufficient facts to show Defendants were deliberately indifferent. Parks claims Defendants "knew or had reason to know other inmates on [his] block at the CFCF posed a danger to [his] safety." *Id.* ¶ 53. Parks doubles down on this point in his response to the motion, writing: "Defendants knew that Plaintiff would be attacked." ECF No. 4 at 8. Yet, Parks alleges no facts to show why or how Defendants would have known of that risk. There are no facts to suggest the risk was communicated to Defendants by any means, and even if it had been communicated, it is far too speculative to entitle Parks to relief. *See Williams v. Del. Cnty. Bd. of Prison Inspectors*, 844 F. App'x 469, 475 (3d Cir. 2021) (deliberate indifference cannot be established through speculative allegations that an inmate with a history of violence might attack another inmate for unknown reasons). Nor do the complaint's allegations regarding other assaults within the Philadelphia Prison System support a finding of deliberate indifference. Parks' description of these assaults—while harrowing—is insufficient to show the risk he faced was obvious. While perhaps indicative of the generally violent conditions

---

[3] During oral argument, counsel for Parks clarified that the inclusion of "Wingfield and Watson" in the complaint was by error. *See* ECF No. 10. Beyond the complaint, a review of the pre-complaint discovery materials from Parks' state court case generates only further confusion. Those materials include a misconduct report from April 11, 2023—the only report provided for April 2023—which lists *nine* individuals who were in a physical altercation with Parks. ECF No. 2 at 24; *see Estate of Roman v. City of Newark*, 914 F.3d 789, 796 (3d Cir. 2019) (matters of public record may be reviewed in evaluating a motion to dismiss).

of prison, the assaults are each sufficiently distinguishable from one another—and from Parks'

assault as alleged—to support an inference of obvious risk.

Because Parks has failed to plead sufficient facts to permit the Court to determine that a

plausible Eighth Amendment failure-to-protect claim exists, the Court dismisses Count II against

Defendants Commissioner Carney, Deputy Warden Butler, and Deputy Warden Rose.

## II.    Count IV: Municipal Liability Claim for Understaffing, Failure to Properly Segregate Inmates, and Failure to Train and Supervise

Next, the Court turns to Count IV, in which Parks brings a municipal liability claim against

the City of Philadelphia, alleging the City's customs of understaffing and improper inmate

segregation, and its failure to train and supervise prison staff, resulted in the violation of his

constitutional rights. In *Monell v. Department of Social Services of City of New York*, the

U.S. Supreme Court provided plaintiffs with a vehicle to hold municipalities accountable for

constitutional violations. *See* 436 U.S. 658 (1978). To plead a municipal liability claim, a plaintiff

must demonstrate that either (1) "an unconstitutional policy or custom of the municipality led to

[their] injuries" or (2) the injuries "were caused by a failure or inadequacy by the municipality that

reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019)

(internal quotation marks and citations omitted). While these two types of claims are similar, the

"avenues remain distinct." *Id.* at 106.

To pursue a claim under the first avenue—an unconstitutional policy or custom—a plaintiff

must show the policy or custom itself violated the Constitution or that it was the "moving force"

behind an employee's constitutional violation. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222

(3d Cir. 2014). A policy refers to official proclamations, policies, or edicts issued by

decisionmakers with final decision-making authority, whereas custom refers to conduct that is so

well-established that despite not being specifically authorized by law, it virtually operates as such.

8

*Roman*, 914 F.3d at 798. At the pleading stage, a plaintiff must link the policy or custom at issue to their injury, showing that it was the proximate cause. *Id.* A link will be found where the municipality knew of past, similar violations and failed to take appropriate precautions, thus leading to the plaintiff's injury. *See id.*

For municipal failure or inadequacy claims—such as failure to train or supervise[4]—a plaintiff need not show the inadequacy was unconstitutional, but rather, that it reflected a "deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Thomas*, 749 F.3d at 223 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997)). To establish deliberate indifference in this context, a plaintiff must make three showings: "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Roman*, 914 F.3d at 798 (internal quotation marks and citations omitted). And because municipal actors must disregard a known or obvious consequence, such claims will succeed only where the municipality was on notice of the underlying deficiency through a pattern of similar constitutional violations or where the need was so obvious that the failure to address it constituted deliberate indifference. *Thomas*, 749 F.3d at 223-24. Liability for the latter category is rare and depends on the "likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens'

---

[4] The failure to train and supervise claims are considered together because they "fall under the same species of municipal liability." *Roman*, 914 F.3d at 799.

rights." *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 409). Additionally, a plaintiff must demonstrate that the municipal failure is closely tied to their injury. *Id.* at 222.

Here, Parks has failed to allege sufficient facts to plead a municipal liability claim via either avenue: (1) policy and custom or (2) failure or inadequacy. As to the former, Parks claims two City customs—"understaffing" and "failing to ensure inmates are properly classified and segregated from inmates in general population"—are responsible for his injury.[5] Compl. ¶¶ 30-31. But Parks' allegations do not sufficiently indicate that either practice is or could be a custom. His descriptions of understaffing are limited and conclusory, and the few examples of improper segregation fail to demonstrate any sort of established norm. Even assuming these practices constitute customs, Parks does not plead any facts to show that that either is unconstitutional nor does he allege sufficient facts to plead that either is the "moving force" behind the Correctional Officers' failure to intervene or protect in his case.[6] Parks does not mention the segregation status or level of either himself or his assailant (or assailants) in his complaint, let alone describe how improper segregation at CFCF resulted in his injuries. Nor does Parks allege any facts to link his injury to understaffing. These missing causal links, in addition to the other pleading inadequacies, are sufficient to dismiss these claims.

---

[5] While using the language of "policy" throughout his complaint, Parks does not point to any specific municipal policy behind his harm. Accordingly, the Court only addresses his custom-based claims. *See McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was.").

[6] Given that the Court has already dismissed the Eighth Amendment claims against the supervisory defendants, the Court proceeds to analyze the municipal liability claim in light of the still-pending claims for failure to intervene and protect against Defendants Correctional Officers Carriker and John Doe. In doing so, the Court makes no determination as to the viability of the underlying failure-to-intervene or failure-to-protect claims against those Defendants.

Additionally, Parks has failed to allege sufficient facts to plead his claims for failure to train and supervise. While pled more generally in his complaint, in his response to the motion to dismiss, Parks alleges the City failed to train Defendants Correctional Officers Carriker and John Doe "to properly discipline inmates, protect inmates, intervene in inmate attacks, and keep inmates safe generally." ECF No. 4 at 8. The Court struggles to find this claim plausible because the facts Parks pleads are so threadbare. Parks cites to seven incidents of assaults by one inmate against another within the Philadelphia Prison System over the last four years, four of which took place at CFCF. Compl. ¶ 29. While horrific examples of prison violence, these incidents do not demonstrate a pattern of violations because Parks does not explain how those incidents are rooted in the same constitutional violations he pleads in this lawsuit. Nor does Parks' own circumstance at CFCF give rise to single-incident liability for the City because he fails to sufficiently demonstrate that what took place against him has a high likelihood of reoccurrence. Parks' conclusory statements leave the Court grasping to make its own connections, the very type of complaint that risks dismissal.

**CONCLUSION**

Parks has failed to sufficiently plead his claims against the moving defendants and accordingly, those claims—Counts I, II, and IV of the Complaint—are dismissed against them. However, because Parks brings a civil rights action, the Court dismisses the claims without prejudice and grants Parks leave to amend. *See LabMD Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022) (citing *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (district courts must grant leave to amend in civil rights cases regardless of whether leave has been requested, unless granting leave to amend would be inequitable or futile).

An appropriate order follows.

BY THE COURT:


<u>/s/ Juan R. Sánchez</u>
Juan R. Sánchez, J.