IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES PARKS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-1299 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

### MEMORANDUM

**Judge Juan R. Sánchez**                                                                                             **August 19, 2025**

      Plaintiff Charles Parks brings this Section 1983 action against prison officials and the City of Philadelphia in regard to an alleged attack against him while he was incarcerated at Curran-Fromhold Correctional Facility. This is Parks's second attempt to plead his claims, after his original complaint was dismissed without prejudice with leave to amend. Defendants now move to dismiss Parks's First Amended Complaint for failure to state a claim. Because Parks has failed to sufficiently plead the claims alleging conspiracy, supervisory liability, and municipal liability, the Court will dismiss those claims with prejudice. Because Parks has alleged plausible claims for failure to protect and failure to intervene, those claims will survive the motion to dismiss.

**BACKGROUND**

      In April 2023, Plaintiff Charles Parks was incarcerated at Curran-Fromhold Correctional Facility (CFCF) in Philadelphia, Pennsylvania. Am. Compl. ¶ 10. On April 12, 2023, another incarcerated individual on Parks's block was missing a personal item. *Id.* ¶ 19. Parks and Defendant Correctional Officer Carriker had an argument regarding the missing item, after which Carriker ordered Parks back to his cell. *Id.* ¶ 21. Shortly after returning to his cell, other incarcerated individuals attacked Parks in his cell, repeatedly kicking and punching him. *Id.* ¶ 22. As the attack took place, Carriker watched and did not intervene. *Id.* ¶¶ 25-27. Parks believes Carriker "orchestrated the [] attack" as retaliation for their earlier argument. *Id.* ¶ 23. Fifteen

minutes later, other correctional officers arrived to stop the attack. *Id.* ¶ 28. Parks suffered a corneal abrasion and a fractured orbital socket as a result of the attack and obtained treatment at Jefferson-Torresdale hospital. *Id.* ¶¶ 29, 31.

Parks now brings Eighth Amendment claims against Correctional Officer Carriker for failure to intervene and failure to protect, in addition to a conspiracy claim for depriving Parks of his constitutional rights. Parks also brings a municipal liability claim against the City of Philadelphia for failure to train and supervise and brings a supervisory liability claim against Commissioner Blanche Carney, Deputy Warden Karen Butler, and Deputy Warden Robert Rose. This is now Parks's second attempt to plead his claims. His original complaint was dismissed without prejudice for failure to state a claim after which Parks filed his First Amended Complaint, the operative complaint. All named Defendants have moved to dismiss the First Amended Complaint—in two separately filed motions—for failure to state a claim. Because the motions address the same complaint and set of issues, the Court will resolve them jointly.

## STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings need not contain "detailed factual allegations" to meet this standard, but must offer more than conclusory statements or formulaic recitations of the elements of a cause of action. *Id.* In its review, a court must (1) determine the elements required to plead each claim, (2) identify which allegations are conclusory and need not be accepted as true, and (3) assess whether the remaining, non-conclusory allegations plausibly entitle the plaintiff to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). A claim is plausible where the alleged facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

In his First Amended Complaint, Parks brings six claims: Eighth Amendment failure to protect and failure to intervene claims against Carriker (Counts I, II, and III),[1] a conspiracy claim against Carriker (Count IV), a supervisory liability claim against Carney, Butler, and Rose (Count V), and a municipal liability claim for failure to train and supervise against the City (Count VI). The Court will dismiss all but the two individual Eighth Amendment claims for failure to state a claim. The Court addresses each in turn.

In Count II, Parks pleads an Eighth Amendment failure to protect claim against Carriker for instigating the attack against Parks. Carriker argues the claim is insufficiently developed and should be dismissed as conclusory. At this stage, however, Parks has alleged sufficient facts to plead a plausible claim for failure to protect. Carriker's motion to dismiss the failure to protect claim will therefore be denied.

The Eighth Amendment requires that prison officials "protect inmates from violence at the hands of other inmates." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id*. (quotation marks and internal citations omitted). However, not all prison assaults are actionable under the Eighth Amendment. Relief under the Eighth Amendment is available where a plaintiff makes two showings: (1) a sufficiently serious deprivation, based on an objective standard, and (2) that the prison official carried out the deprivation with a "sufficiently culpable

---

[1] In Count I, Parks brings a general Eighth Amendment claim against Carriker in which he pleads failure to intervene and failure to protect. *See* Am. Compl. at 11-13. Because this count is duplicative of the more specific Eighth Amendment claims against Carriker set forth in Counts II and III, the Court will dismiss Count I. *See Telford Borough Auth. v. U.S. Env't Prot. Agency*, No. 12-6548, 2020 WL 605666, at *7 (E.D. Pa. Feb. 6, 2020) ("The Court has authority to dismiss duplicative claims on motion to dismiss."); *Giannone v. Ayne Inst.*, 290 F. Supp. 2d 553, 566 (E.D. Pa. 2003) (collecting cases where courts have dismissed duplicative claims).

state of mind," based on a subjective standard. *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834).

As to the first prong, a deprivation is sufficiently serious when it results in the "denial of the minimal civilized measure of life's necessities" and where the prisoner is "incarcerated under conditions posing substantial risk of serious harm." *Porter*, 974 F.3d at 441 (quoting *Farmer*, 511 U.S. at 834). "[T]he prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). To establish the second prong, a plaintiff must show that the prison official acted with "deliberate indifference" to prisoner health and safety, meaning the official actually knew of the risk of harm and did not seek to address it. *Farmer*, 511 U.S. at 847; *see also Thomas*, 948 F.3d at 138. Demonstrating knowledge requires a showing that the official was "actually . . . aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). Even where knowledge is established, liability will not be imposed if the official acted reasonably—regardless of whether harm occurred—as the Eighth Amendment only imposes the obligation to establish "reasonable safety." *Id.*

Parks alleges that Defendant Carriker was an active participant in the attack against him. He alleges not that she was a passive bystander, but that she instigated the attack by directing other incarcerated individuals to attack him. While the details are sparse, at this early stage of litigation, the allegations are sufficient to support an inference that Carriker was deliberately indifferent to Parks's safety. "Intentionally exposing an inmate to the risk of harm with no penological purpose is indicative of deliberate indifference to the inmate's safety at best and manifests an intent to harm the inmate at worst, thus constituting cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution." *Gorrio v. Shorter, No. 23-4807, 2024 WL 2188910, at \*5 (E.D. Pa. May 15, 2024) (quoting Smolen v. Brown*, No. 18-7621, 2023 WL

4

6199094, at *9 (S.D.N.Y. Sept. 22, 2023)); *see also McClain v. Carney*, No. 23-4012, 2024 WL 113761, at *10 (E.D. Pa. Jan. 10, 2024) ("If, as Mr. McClain alleges, Defendants Carter and Hawkins offered other inmates $100 in commissary to stab Mr. McClain, that conduct would amount to deliberate indifference to his safety."); *Gorrio*, 2024 WL 2188910, at *5 (finding deliberate indifference was plausible where correctional officers were running a "fight club" in prison through which they encouraged inmates to seriously harm each other for money, and did not intervene when the attacks were ongoing). Accordingly, Carriker's motion to dismiss the failure to protect claim against her is denied.

Parks also bring an Eighth Amendment claim against Carriker for failing to intervene to stop the attack against Parks despite being present at the scene and able to stop the attack. Am. Compl. ¶ 81. Carriker also moves to dismiss this claim, arguing she did not have a realistic and reasonable opportunity to intervene. Because Parks has alleged sufficient facts to plead a plausible claim, this claim survives Carriker's motion to dismiss.

"[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). However, courts will only impose liability where the officer had a "realistic and reasonable opportunity to intervene." *Id.* at 651. The duration of the incident may help indicate whether the opportunity to intervene was reasonable; "brevity may defeat a failure-to-intervene claim." *El v. City of Pittsburgh*, 975 F.3d 327, 335 (3d Cir. 2020).

Parks alleges that while several inmates kicked and punched him, Carriker "stood by and watched." Am. Compl. ¶¶ 23-25. The attack lasted approximately fifteen minutes, at which point other guards arrived and stopped the attack. *Id.* ¶ 28. Carriker argues she did not have a reasonable opportunity to intervene because she was outnumbered and intervention posed a serious risk of

5

harm to herself. ECF No. 21 at 10. She further challenges the allegations as boilerplate and lacking as to the assertion that she did not request assistance. *Id.* While Parks's allegations are limited, they allege a plausible claim. Additional discovery is necessary because the facts do not yet reveal a clear assessment of the risk to Carriker, making it premature to determine whether she did or did not have a realistic and reasonable opportunity to intervene. The fact that the attack lasted fifteen minutes—a significant duration—further makes it plausible that she could have intervened. The Court makes no ultimate determination as to the validity of Parks's claim, finding only that it is sufficient to survive a motion to dismiss.

Next, the Court turns to Count IV, Parks's conspiracy claim in which he alleges Carriker "conspired to deprive [Parks] of his constitutional rights" by taking "overt steps in furtherance of the conspiracy to have other inmates on the block housed with Plaintiff attack him." Am. Compl. ¶¶ 89-90. Carriker seeks to dismiss the conspiracy claim because Parks has not alleged that Carriker entered into an agreement with any another individual, as required to plead conspiracy. The Court agrees with Carriker and will dismiss the claim.

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law reached an understanding to deprive him of his constitutional rights." *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020) (internal citation omitted). There must be an "agreement" between the parties, followed by "concerted action." *Id.* Absent a clear agreement, a plaintiff may provide factual support indicating there was a "meeting of the minds" or may show agreement through circumstantial evidence. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018) Where circumstantial evidence is involved, courts look to whether "the alleged conspirators did or said something to create an understanding, the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy." *Id.* (internal citation and quotation marks omitted).

6

Here, Parks fails to plead sufficient facts to state a plausible conspiracy claim. Parks alleges Carriker engaged in a conspiracy by taking "overt steps in furtherance of the conspiracy to have other inmates on the block housed with Plaintiff attack him." Am. Compl. ¶ 90. But the allegations are conclusory, because Parks alleges no facts to indicate what those "overt steps" were. The Court's only guidance is Parks's description of the underlying attack, in which he describes that he and Carriker had an argument and shortly thereafter, he was attacked by other incarcerated individuals while Carriker looked on. *Id.* ¶¶ 21-23. Besides the temporal proximity between their argument and the attack, there are no facts to suggest Carriker had a "meeting of the minds" with any other individual to attack Parks nor that she did or said something to create an understanding. The facts "do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The conspiracy claim against Carriker will therefore be dismissed.

In Count V, Parks pleads a Fourteenth Amendment supervisory liability claim against Defendants Carney, Butler, and Rose. Am. Compl. at 17-19. Parks alleges Defendants were "aware that certain policies and customs posed a grave danger" to him and that their inadequate policies ultimately caused his injuries. *See id.* ¶¶ 97-100. Parks specifically focuses on the understaffing at CFCF, linking his injuries to the history of short staffing at the facility. Parks also alleges Defendants knew Parks "was in danger of being physically attacked by other inmates" and "were aware of a substantial risk that [he] would be attacked." *Id.* ¶¶ 103-04. Defendants move to dismiss this claim, arguing they cannot be held vicariously liable for the actions of their supervisees. Because § 1983 precludes relief based on vicarious liability, the Court will dismiss Count IV.

Section 1983 liability applies only to those who had a "personal involvement in the alleged wrongs," meaning there is no *respondeat superior* theory of liability under the statute. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). A plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."

7

*Iqbal*, 556 U.S. at 676. To plead personal involvement, a plaintiff may allege facts to show personal direction or actual knowledge and acquiescence. *Rode,* 845 F.2d at 1207. Such allegations must be "made with appropriate particularity," including such information as the time, place, and persons responsible. *Id.* Where a court can "infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. N.J. Dept. of Corr*., 806 F.3d 210, 222 (3d Cir. 2015).

In the First Amended Complaint, Parks alleges in a very general manner that Carney, Butler, and Rose "knew of the risk to [Parks's] safety because of their knowledge that the CFCF was grossly understaffed at the time of the attack," *id.* ¶ 34, and because they "knew or had reason to know other inmates" posed a danger to his safety." *Id.* ¶ 95. But Parks fails to explain why or how they would know such information, and more importantly, how such knowledge would establish their personal involvement in the attack against Parks specifically. The threadbare allegations fail to sufficiently plead personal direction or actual knowledge and acquiescence on the part of the Defendants. *See Iqbal*, 556 U.S. at 678 (holding that formulaic recitation of the elements will not survive a motion to dismiss). As such, the Court will dismiss with prejudice the Fourteenth Amendment supervisory liability claim against Defendants Carney, Butler, and Rose.

Lastly, the Court will address Parks's municipal liability claim against the City of Philadelphia for failure to train and supervise (Count VI). In the First Amended Complaint, Parks alleges the City knew correctional officers would encounter difficult situations at CFCF and alleges the City was aware of a history of correctional officers failing to follow security and safety protocols, often resulting in Eighth Amendment violations. *Id.* ¶¶ 123-27. Parks ties his injury to the "failure to adequately train and supervise" Carriker. *Id.* ¶ 129. However, because Parks has not alleged facts sufficient to plausibly establish municipal liability, the Court will also dismiss this claim.

To plead a municipal liability claim for failure to train and supervise,[2] a plaintiff must demonstrate that their injuries "were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal quotation marks and citations omitted). Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997)). For failure to train, a plaintiff must demonstrate deliberate indifference by establishing a "pattern of similar constitutional violations by untrained employees," unless the need for training is "so obvious." *Thomas*, 749 F.3d 217, 223 (internal citation and quotation marks omitted) (describing, for example, that the need to train police officers on the constitutional limitations on deadly force was so obvious that "a failure to provide such training could provide a basis for single-incident municipal liability."). Generally, though, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* (internal citation omitted).

Here, Parks's municipal liability claim against the City fails because he has not pled sufficient facts to plausibly allege the City acted with deliberate indifference. While Parks describes seven horrific incidences of violence within the Philadelphia prison system in his First Amended Complaint, none of those incidents appear to involve a situation in which a correctional officer, emboldened by the lack of other staff, orchestrated an attack against an inmate, as alleged here. It is unclear how the seven incidences Parks describes would have put the City on notice of a pattern of correctional officers abusing their power and directing a group of incarcerated

---

[2] The failure to train and supervise claims "fall under the same species of municipal liability" and are considered together. *Estate of Roman v. City of Newark*, 914 F.3d 789, 799 (3d Cir. 2019).

individuals to assault another. Moreover, Parks does not describe how the training and supervision received by Carriker were deficient, or what changes to her training and supervision would have prevented the attack. *See, e.g., Stava v. City of Lancaster*, No. 25-2392, 2025 WL 2301188, at *3 (E.D. Pa. Aug. 8, 2025) (dismissing failure to train and supervise claims for failing to allege a pattern of similar constitutional violations that would have put the City on notice and also for failing to specify how the training, supervision, or discipline was deficient). Without questioning the impact of this incident on Parks, the Court holds only that the facts as pled do not survive a motion to dismiss. *See Oliver v. City of Phila.*, No. CV 25-197, 2025 WL 1902298, at *10 (E.D. Pa. July 9, 2025) ("Allegations that 'simply paraphrase' the standard for municipal liability are too vague and generalized to support a *Monell* claim.") (quoting *McTernan v. City of York, PA*, 564 F.3d 636, 659 (3d Cir. 2009). ³

---

³ Based on the complaint and Parks's response to municipal defendants' motion to dismiss, the Court understands Parks as primarily alleging a municipal liability claim based on failure to train and supervise. However, to the extent his claim is also based on a custom of understaffing, that claim also fails. To succeed on a custom-based municipal liability claim, a plaintiff must allege "an unconstitutional policy or custom of the municipality led to [their] injuries." *Forrest*, 930 F.3d at 105. "Custom" refers to conduct that is so well-established that it virtually operates as law. *Roman*, 914 F.3d at 798. A plaintiff must link the custom at issue to their injury, showing it was the proximate cause. *Id.* A link will be found where the municipality knew of past, similar violations and failed to take appropriate precautions, thus leading to the alleged harm. *See id.* Parks alleges the City knew CFCF was "grossly understaffed" and that "due to short staffing, individual corrections officers could promote the type of vigilantism . . . to punch inmates on their block." Am. Compl. ¶¶ 118-19. But Parks's allegations fall short of the pleading standard because he fails to plead facts to plausibly allege the City knew of similar violations and failed to act. The crux of Parks's allegations are that Carriker orchestrated the attack against him, and that this type of abuse was made possible by the understaffing. As previously discussed, Parks sets forth no facts to suggest the City knew of similar, past violations and then failed to act. To the extent Parks pleads a *Monell* claim for a custom of understaffing, the Court will dismiss that claim with prejudice.

Additionally, as with his previous complaint, Parks uses the language of "policy" throughout his First Amended Complaint but does not specify the policy he seeks to challenge. *See McTernan*, 564 F.3d at 658 ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."). Any claim alleging an unconstitutional policy will also be dismissed with prejudice.

10

**CONCLUSION**

The Court will dismiss Parks's claims for conspiracy, supervisory liability, and municipal liability for his failure to sufficiently plead those claims. The remaining two claims—the Eighth Amendment failure to protect and failure to intervene claims against Defendant Carriker—will survive and proceed to discovery. Because Parks has had multiple opportunities to plead his claims, the Court will not grant further leave to amend. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment would be futile where a plaintiff "already had two chances to tell his story.").

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.
